JEFFREY C. KRAUSE (State Bar No. 94053),
jkrause@stutman.com
ERIC D. GOLDBERG (State Bar No. 157544),
egoldberg@stutman.com
H. ALEXANDER FISCH (State Bar No. 223211), and
afisch@stutman.com
MICHAEL S. NEUMEISTER (State Bar No. 274220), Members of
mneumeister@stutman.com
STUTMAN, TREISTER & GLATT
PROFESSIONAL CORPORATION
1901 Avenue of the Stars, 12th Floor
Los Angeles, CA 90067
Telephone:    (310) 228-5600
Telecopy:    (310) 228-5788

[Proposed] Reorganization Counsel for
Debtor and Debtor in Possession

Debtor's Mailing Address:
Post Street LLC
c/o Bend Properties
1920 Main St Suite # 150
Irvine, CA  92614

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re<br><br>POST STREET, LLC,<br><br>         Debtor. | Case No. 11-32255<br><br>Chapter 11<br><br>**DECLARATION OF JEFFREY C. KRAUSE IN SUPPORT OF APPLICATION FOR ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF STUTMAN, TREISTER & GLATT PROFESSIONAL CORPORATION AS REORGANIZATION COUNSEL FOR THE DEBTOR AND DEBTOR IN POSSESSION** |

I, Jeffrey C. Krause, declare as follows:

1. I am over eighteen years of age, and I have personal knowledge of each of the facts stated in this declaration. If called as a witness, I could and would testify as to the matters set forth below based upon my personal knowledge.

2. I am a senior shareholder at the law firm of Stutman, Treister & Glatt Professional Corporation ("ST&G"), proposed reorganization counsel for Post Street, LLC (the "Debtor"), the debtor and debtor in possession in the above captioned case.

3. I submit this declaration pursuant to Federal Rule of Bankruptcy Procedure 2014(a) in support of the *Application for Order Authorizing the Employment and Retention of Stutman, Treister & Glatt Professional Corporation as Reorganization Counsel for the Debtor and Debtor in Possession* (the "Application").

**A.  Services to be Rendered by ST&G.**

4. ST&G is composed of attorneys who limit their practice to the areas of insolvency, reorganization, and bankruptcy law. I believe that ST&G is well qualified to represent the Debtor. All attorneys comprising, or associated with, ST&G who will render services in these chapter 11 cases are duly admitted to practice law in the courts of the State of California and in the United States District Court for the Northern District of California.[1] A summary of the experience and qualifications of those members of ST&G expected to render substantial services to the Debtor in these cases is attached hereto as Exhibit 1.

5. The Debtor desires to employ ST&G as its reorganization counsel in connection with its chapter 11 case, and in that regard require counsel to render the following types of professional services:

    a. To advise the Debtor regarding matters of bankruptcy law;

    b. To represent the Debtor in proceedings and hearings in the United States Bankruptcy Court for the Northern District of California involving matters of bankruptcy law;

---

[1] The application for the admission of Michael S. Neumeister to practice in the United States District Court for the Northern District of California is presently pending.

552411v2

2

c. To advise the Debtor concerning the requirements of the Bankruptcy Code, federal and local rules relating to the administration of this case, and the effect of the case on the operation of the Debtor's business and affairs;

d. To prepare on behalf of the Debtor all necessary motions, applications, orders, and other legal papers; and

e. To assist the Debtor in the negotiation, preparation, confirmation, and implementation of a plan of reorganization.

6. On June 14, 2011, ST&G and the Debtor executed a retainer agreement whereby ST&G agreed to act as reorganization counsel for the Debtor (the "Retainer Agreement"). A true and correct copy of the Retainer Agreement is attached hereto as Exhibit 2.

**B. Compensation Arrangements.**

7. ST&G began providing pre-bankruptcy and insolvency advice and services to the Debtor on May 31, 2011. During the approximately two-week period before the Petition Date, ST&G received compensation in the aggregate amount of $22,010.68 from the Debtor for prepetition services rendered on the Debtor's behalf. This amount came from the $280,000 retainer that ST&G received before the Petition Date for services to be rendered and expenses to be incurred in connection with the Debtor's chapter 11 case (the "Chapter 11 Retainer"). The Debtor does not owe ST&G any amount for prepetition services.

8. ST&G has deposited the Chapter 11 Retainer in a segregated interest-bearing trust account to secure the payment of ST&G's fees and expenses as allowed by this Court. As of the Petition Date, $257,989.32 of the Chapter 11 Retainer remains in the trust account. ST&G acknowledges that the Chapter 11 Retainer is subject to the Court's review pursuant to Bankruptcy Code section 329(b). The Chapter 11 Retainer is not a fixed fee. To the extent the fees for services and expenses allowed pursuant to orders of the Court under Bankruptcy Code section 330 do not exceed the amount of the Chapter 11 Retainer, ST&G will promptly return the difference to the Debtor's estate; however, it is likely that ST&G's aggregate fees and costs will exceed the Chapter 11 Retainer.

552411v2

9. Stanley Gribble is the sole member and sole manager of the Debtor. It is my understanding that the Debtor's principal secured leader may also contend that Mr. Gribble is a guarantor of the Debtor's secured debt. Mr. Gribble advanced the funds that Debtor used to pay the Chapter 11 Retainer to the Debtor. Mr. Gribble has also agreed to fund advances to the Debtor necessary to pay ST&G's fees and expenses in excess of the Chapter 11 Retainer. Mr. Gribble has agreed that ST&G shall only represent the interests of the Debtor, notwithstanding his commitment to advance funds on the Debtor's behalf, as set forth in the "Acknowledgement and Agreement" to the Retainer Agreement. ST&G only represents, and will only accept direction from, the Debtor in this case. The Retainer Agreement expressly provides that ST&G does not represent Mr. Gribble, personally.

10. ST&G has agreed to accept as compensation for its services in this case such sums as may be allowed by the Court in accordance with law, based upon the time spent and services rendered, the results achieved, the difficulties encountered, the complexities involved, and other appropriate factors. Subject to the Court's approval, ST&G will charge the Debtor for ST&G's services in accordance with hourly rates it charges to certain regional debtors in effect at the time services are rendered. A summary of (i) the range of the applicable current hourly rates for ST&G that will be charged in this case, and (ii) the hourly rates of those members of ST&G expected to render substantial services to the Debtor is attached here as <u>Exhibit 3</u>. No compensation will be paid by the Debtor to ST&G except as authorized by this Court.

**C.      Disinterestedness.**

11. Except as they are and have been the attorneys for the Debtor and except as otherwise set forth herein, ST&G and all of the attorneys comprising or employed by it are disinterested persons who do not hold or represent an interest adverse to the Debtor's estate and do not have any connection with the Debtor, its estate, its creditors, the Office of the United States Trustee, or any other party in interest in this case or with their respective attorneys or accountants.

12. To check for potential conflicts, ST&G conducted its standard conflicts check procedure. Specifically, ST&G identified certain related parties and then used its conflicts check

software program to generate a conflicts report.[2] I analyzed that conflicts check report for any potential conflicts. To the best of my knowledge, based on the conflict searches conducted by ST&G, I believe that ST&G and all of the attorneys comprising or employed by it: (i) do not hold or represent an adverse interest in connection with the Debtor's chapter 11 case; (ii) do not hold or represent an interest adverse to the interests of the Debtor's estate with respect to the matter on which ST&G is being employed; (iii) are "disinterested persons" within the meaning of section 101(14) of the Bankruptcy Code; and (iv) do not have any other connection with the Debtor, its creditors, any other party in interest, their respective attorneys or accountants, the United States Trustee, nor any person employed in the Office of the United States Trustee.

13. The fee arrangement set forth in the Retainer Agreement does not constitute a conflict under the circumstances here. The arrangement has been fully disclosed to the Debtor and Mr. Gribble. The Debtor has expressly consented to the arrangement. Mr. Gribble has acknowledged that ST&G represents only the interests of the Debtor. The Application fully discloses the factual and legal relationship between Mr. Gribble, the Debtor, and ST&G, and the arrangement regarding the payment of the Debtor's fees. To my knowledge, there are no facts that would otherwise impact ST&G's disinterestedness, or create an actual conflict or impermissible potential for a conflict of interest.

14. Pursuant to the Retainer Agreement, ST&G, the Debtor and Festival Retail Fund have agreed that ST&G may hereafter be engaged to also represent Festival Retail Fund and, that in the event of such representation ST&G will not represent the Debtor or Festival Retail Fund in connection with any conflicts that may arise as between them. At the present time the Debtor and ST&G are not aware of any conflicts as between Festival Retail Fund and the Debtor. They are co-owners of the Property and their interests in maximizing the value of the Property appear to be aligned. At this time ST&G has not been engaged by and does not represent Festival Retail Fund.

15. It is possible that ST&G may have represented in the past, or may represent in the future, parties that are creditors or other parties in interest in the Debtor's chapter 11 case in

---

[2] The conflict searches include a search of ST&G's client records dating back to the 1980s.

552411v2

matters entirely unrelated to the Debtor's chapter 11 case. ST&G will conduct an ongoing review of its files to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new facts or circumstances are discovered, ST&G will supplement its disclosure to this Court.

16. Several attorneys at ST&G have spouses, parents, children, siblings, fiancés or fiancées who are attorneys at other law firms and companies. Those law firms and companies are Gibson, Dunn & Crutcher; Munger, Tolles & Olson; Owens & Gach Ray; Pachulski, Stang, Ziehl & Jones; Kendall, Brill & Klieger LLP; Cahill & Glazer; Saltzburg, Ray & Bergman; Deloitte Touche LLP; and Skadden, Arps, Slate, Meagher & Flom LLP & Affiliates. ST&G has strict policies against disclosing confidential information to anyone outside of the firm, including spouses, parents, children, siblings, fiancés, and fiancées.

17. The following supplemental disclosures are made with respect to ST&G's disinterestedness and connections with the Debtor. References to ST&G include all members of that firm who are expected to render services in this case.

    a. ST&G is not and was not a creditor, an equity holder, or an insider of the Debtor, except that ST&G has previously rendered legal services to the Debtor for which it has been compensated as disclosed above.

    b. ST&G is not and was not an investment banker for any outstanding security of the Debtor.

    c. ST&G is not and was not, within three years before the Petition Date, either an investment banker for a security of the Debtor or an attorney for any such investment banker in connection with the offer, sale or issuance of any security of the Debtor.

    d. ST&G is not and was not, within two years before the Petition Date, a director, officer, or employee either of the Debtor or of any investment banker for any security of the Debtor.

    e. No member of ST&G is a relative or an employee of the United States Trustee or a Bankruptcy Judge in the Northern District of California.

552411v2

f. ST&G has no interest materially adverse to the interests of the Debtor's estate or of any class of creditors or equity holders, either by reason of any direct or indirect relationship to, connection with, or interest in the Debtor or an investment banker for any security of the Debtor or for any other reason.

18. I am the shareholder of ST&G who will bear primary responsibility for supervising the representation of the Debtor, and I believe that ST&G is competent to represent the interests of the Debtor as reorganization counsel in connection with this chapter 11 case.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on July 15, 2011, at Los Angeles, California.

_____
JEFFREY C. KRAUSE

# EXHIBIT 1

552411v2

**Summary of the Experience and Qualifications of Stutman, Treister & Glatt Attorneys Expected to Render Services**

**Jeffrey C. Krause**: Mr. Krause is a senior shareholder of ST&G. He was born in Los Angeles, California in 1956 and attended the University of California at Los Angeles, where he received his B.S. in Economics in 1977, and his J.D. in 1980. Mr. Krause served on the UCLA Law Review, and was admitted to the Order of the Coif.

Mr. Krause is the author of: "California Real Property Financing: Bankruptcy and Secured Real Property Transactions," CEB, 1989 (Contributing Author); Steinberg, Bankruptcy Litigation, 1989 (Contributing Author); "Whose Lawyer Are You: Fiduciary Obligations of Debtor in Possession's Counsel," 31 Beverly Hill Bar Ass'n Journal, Vol. 2 (1997); "In a Class All Their Own," Vol. 20, No. 5, Los Angeles Lawyers 42, (July-August 1997); "Appellate Practice Educational Materials for Federal Judicial Center Programs for New Bankruptcy Appellate Panel Judges," (1996 and 1997); "The Bias of the Courts Against Single Asset Real Estate Cases is Creating Bad Law in the Area of Classification," 22 Cal. Bankr. J. 45, 1994; "United States Trustee Guidelines Regarding Prepetition Retainers, "18 Cal. Bankr. J. 135, 1990; "Treatment of Prepetition Retainers," 17 Cal. Bankr. J. 153, 1989; "Foreclosure Sales Should Not Be Treated As Fraudulent Transfers," 1 ABA Bankr. Litigation Newsletter 7 (1993); "Non-Collusive Foreclosure Sales of Real Property Are Not Avoidable As Fraudulent Transfers," 3 ABA Bankr. Litigation Newsletter 18 (1995); Consultant, Bernhardt, California Mortgage and Deed of Trust Practice (2d ed. 1989 CEB).

Mr. Krause has served as an Adjunct Professor, University of Southern California School of Law, 1994-2000 and 2002; Loyola School of Law, 1987 and 1988. He is a member of the Los Angeles County (Former Member of Executive Committee of Section on Commercial Law and Bankruptcy and Past Chair of Pro Bono Debtor Assistance Project) and American (Member, Sections on Litigation and Business Law; Past Co-Chairman of Bankruptcy and Insolvency Committee of the Litigation Section) Bar Associations; The State Bar of California (Former Member, UCC Committee, Business Law Section, 1987-1990; Former Member, Debtor-Creditor Committee, Business Law Section, 1992-1995); Los Angeles Bankruptcy Forum (Past President); California Bankruptcy Forum (Former Director); Financial Lawyers Conference (Former Board Member, 1999-2002).

Reported Cases: *In re Felburg*, 39 Bankr. 591 (Bankr. C.D. Cal. 1984); *Pistole v. Mellor (In re Mellor)*, 734 F. 2d 1396 (19th Cir. 1984); *In re Safren*, 65 Bankr. 566 (Bankr. C.D. Cal. 1986); *Black & White Cattle Co. v. Shamrock Farms Co. (In re Black & White Cattle Co.)*, 30 Bankr. 508 (Bankr. 9th Cir. 1983), rev'd. 746 F. 2d 1484 (9th Cir. 1984); *Black & White Cattle Co. v. Granada Services, Inc. (In re Black & White Cattle Co.)*, 783 F. 2d 1454 (9th Cir. 1986); *In re Lindsay*, 59 F. 3d 942 (9th Cir. 1995).

**Eric D. Goldberg:** Mr. Goldberg is a senior shareholder of ST&G. He was born in New York, NY and has been a member of the firm since 1991.

Mr. Goldberg's practice is concentrated in representing distressed investors, hedge funds and creditors' and equity committees, as well as financially troubled companies, both in and out of court. His practice also has an emphasis in complex bankruptcy-related litigation, including contested confirmation hearings and termination of collective bargaining and pension plans.

Mr. Goldberg has been involved in bankruptcy cases all over the United States, including those of Tower Automotive, Enron, Loral, Hawaiian Airlines, Mariner Health Group and Trump

552411v2

Hotels & Casino Resorts. His most recent assignments include representing: the Official Equity Committee in 3DFX Interactive, Inc.; Leucadia National Corp. in its acquisition of ATX/Corecomm Communications through chapter 11, as well as its 'stalking horse' bid for VarTec Telecom; chapter 11 debtor Falcon Industries in its successful litigation with the PBGC to terminate its pension plan; Sirius Satellite Radio in its out of court restructuring; Edwards Theatres, Inc. and its affiliates in their chapter 11 reorganization; and Southern California Edison in its out of court restructuring.

Mr. Goldberg is a frequent speaker on bankruptcy-related topics. He has made presentations to the American Bankruptcy Institute, the Strategic Research Institute and the Los Angeles Bankruptcy Forum, among others, on topics including asset acquisitions in chapter 11, claims litigation and the chapter 11 plan process. Mr. Goldberg is listed in Best Lawyers in America, and was named by Los Angeles Magazine as a "Rising Star" in its "Superlawyers" issue.

**H. Alexander Fisch**: Alex Fisch is a shareholder of Stutman, Treister & Glatt. He represents corporate, municipal and individual debtors, creditors, and stakeholder groups, in and out of bankruptcy proceedings. Mr. Fisch's practice has included navigating a broad range of complex insolvency-specific issues and matters that arise in corporate, municipal and transnational insolvency proceedings, such as conducting and participating in sale processes and litigating plan confirmation, valuation, subordination and labor disputes. His significant non-confidential engagements include representing the examiner appointed in the chapter 11 cases of Extended Stay, Inc. and certain of its affiliates; Did Hirsch Community Mental Health Center in its acquisition of certain assets of Verdugo Mental Health; Valley Health System in its chapter 9 case; the official committee of unsecured creditors and the liquidating trust of Azabu Buildings Co., Ltd.; as well as the City of Palmdale and City of Palmdale Community Facility District 93-1 as a Mello-Roos special tax creditor in the chapter 11 case of Ritter Ranch.

Mr. Fisch attended the University of California, Berkeley, where he received an A.B. with honors in 1997. He received his J.D., with a concentration in Business Law and Policy, from the University of California, Los Angeles School of Law in 2002 and was admitted to the Order of the Coif. Following law school, Mr. Fisch served as law clerk to the Honorable Arthur L. Alarcon, U.S. Court of Appeals, Ninth Circuit.

**Michael S. Neumeister**: Mike Neumeister has been an associate with Stutman, Treister & Glatt since becoming a member of the California bar in 2010. He attended the University of California, San Diego, where he received a B.A. in Political Science with honors. Mr. Neumeister received his J.D. from the USC Gould School of Law in 2010, and graduated as a member of the Order of the Coif. While in law school, Mr. Neumeister served as a judicial extern for the Honorable Sandra S. Ikuta, United States Court of Appeals for the Ninth Circuit, and was an editor for the Southern California Law Review.

# EXHIBIT 2

June 14, 2011

VIA EMAIL

Post Street, LLC
Attn: Stanley Gribble

    Re:    Retainer Agreement Between Stutman, Treister & Glatt
               Professional Corporation and Post Street, LLC

Dear Stan:

       This letter sets forth the terms and conditions upon which Stutman, Treister & Glatt Professional Corporation ("ST&G") will represent Post Street, LLC ("CLIENT").

       Scope of representation.

       As you are aware, ST&G limits its practice to insolvency, reorganization and bankruptcy matters. Included within the parameters of our practice are the representation of debtors, secured and unsecured creditors, creditors' committees, equity interests, and third parties interested in acquiring control of, or ownership of the assets of, entities experiencing financial difficulties.

       As set forth herein, ST&G will act as CLIENT's special reorganization counsel to render such ordinary and necessary legal services as may be required in connection with representing the interests of CLIENT in out-of-court planning or creditor negotiations and in any bankruptcy case which may be filed by CLIENT in either the United States Bankruptcy Court for the Central District of California or for the Northern District of California (the "Bankruptcy Court").

       Exclusions from responsibilities.

       ST&G's employment as CLIENT's special reorganization counsel does not include the following: appearances before any court or agency other than the Bankruptcy Court and the Office of the United States Trustee; litigation in the Bankruptcy Court with respect to matters which are, in the main, disputes involving issues of nonbankruptcy law; or the provision of advice outside the insolvency area, in areas such as corporations, taxation, securities, torts, environmental, labor, criminal, or real estate law. Unless otherwise agreed to in writing, our responsibilities will not include collection matters or appellate work. Further, the limited scope

of our employment does not include giving attention to, forming professional opinions as to, or advising you with respect to, your disclosure obligations under federal securities or other nonbankruptcy laws or agreements.

You have represented to us that CLIENT will engage other competent counsel to represent it in all matters outside the scope of our employment. ST&G is relying on the availability of other competent counsel to handle those matters. Indeed, it is a condition of our employment that you continue to retain competent general counsel to handle matters beyond the scope of our representation. ST&G will consult with CLIENT as to only those aspects of the matter which are within the scope of its representation to which you request that we devote attention.

Retainer.

CLIENT has paid to ST&G an out-of-court retainer of $30,000 for professional services that ST&G will provide and expenses ST&G will incur in advising CLIENT regarding creditor negotiations and preparation to file a chapter 11 petition. CLIENT has agreed to pay ST&G a reasonable fee for its services and to reimburse ST&G for costs and expenses charged to its account. We have agreed upon the sum of $250,000 as an additional retainer for the professional services ST&G will render and expenses ST&G will incur as CLIENT's special reorganization counsel in connection with a case under chapter 11 of the Bankruptcy Code that may be filed by CLIENT. Please send us a wire transfer in that amount. The wire transfer information has been sent to you separately. CLIENT grants ST&G a security interest in the retainer to secure CLIENT's obligations to ST&G. The retainer will be deposited into an interest-bearing money market trust account under its tax identification number. It will be a deposit against the fees and accosts incurred in the chapter 11 case. It is NOT a fixed fee and the aggregate fees and costs incurred in the chapter 11 case will most likely exceed the retainer.

Financial arrangement—pre-petition services.

Each month ST&G will send CLIENT an invoice requesting a payment to be made. Each invoice constitutes a request for an interim payment against the reasonable fee to be determined at the conclusion of our representation. CLIENT shall advise ST&G of any difference it may have with any invoice within 10 calendar days after the date of the invoice. If CLIENT does not remit the requested amount within 10 calendar days of the date of the invoice, or bring to our attention any errors in or other disputes concerning the invoice, payment of the invoice, excluding any disputed amounts, will be made automatically by the transfer of funds from the trust account to ST&G's general account. CLIENT agrees these payments are not refundable. CLIENT further agrees, within 10 calendar days following its receipt of ST&G's invoice, to pay the invoice, thereby replenishing the retainer to its original level. ST&G and CLIENT will attempt in good faith to resolve any dispute regarding an invoice.

ST&G's monthly invoices will reflect charges for services rendered calculated on the basis of our guideline hourly rates in effect at the time of such services. For attorney services

these rates presently range from $285 to $950 per hour. The current guideline hourly rates for those attorneys expected to perform services on your behalf are as follows: $495 for Alex Fisch and $825 for Jeff Krause. The current guideline hourly rate charged for paralegals is $240, and for law clerks ranges from $240 to $260. All ST&G invoices will reflect the identity, services rendered, time spent, and fees charged by each professional providing services on CLIENT's behalf. Our guideline hourly rates are adjusted periodically, typically on January 1 of each year, to reflect the advancing experience, capabilities, and seniority of our professionals as well as general economic factors.

Our invoices will also include reasonable and customary charges for costs and expenses. Such costs and expenses will include, among others, charges for messenger services, air couriers, word processing services, secretarial overtime, photocopying, court fees, travel expenses, postage for large mailings, long distance telephone, computerized legal research facilities, investigative searches, and other charges customarily invoiced by law firms in addition to fees for legal services. (In the event extraordinary or significant expenses are incurred, such as transcript costs or costs for duplication of files should you request originals or copies thereof during or at the conclusion of our representation, you have agreed that you will pay those expenses directly or will promptly reimburse us separately from our normal invoice procedure.)

<u>Financial arrangements – chapter 11 services</u>.

CLIENT has agreed that, immediately prior to the bankruptcy filing, ST&G may deduct from the balance of both retainers any amounts in respect of unpaid prepetition services rendered and expenses incurred by ST&G. The balance of the retainer shall be retained in the interest-bearing trust fund account under CLIENT's tax identification number and shall constitute a "security retainer" to secure payment to ST&G for allowed services rendered and expenses incurred by ST&G as specified below. CLIENT grants ST&G a security interest in and to the trust account established for purposes of this security retainer. ST&G will promptly comply with any Bankruptcy Court order requiring ST&G to refund all or any portion of the above-referenced retainer. CLIENT agrees that if the Bankruptcy Court orders that the retainer be refunded or paid to a third party or determines that the retainer is subject to the claims of a third party, then unless alternative financial arrangements acceptable to ST&G are made for payment of ST&G's fees and expenses, ST&G may withdraw as counsel for CLIENT, and, in such event, this agreement shall constitute consent to ST&G's withdrawal, CLIENT will execute any supplemental consents necessary to obtain Bankruptcy Court approval of such withdrawal, and CLIENT will be solely responsible for obtaining other counsel.

ST&G's services rendered and expenses incurred shall be subject to allowance by the Bankruptcy Court. All compensation and reimbursement of expenses shall be applied first against the funds maintained in the trust account. CLIENT consents to ST&G drawing down on the funds maintained in the trust account to satisfy ST&G's monthly invoices pending allowance by the Bankruptcy Court. Should we seek additional compensation for services rendered during the course of the case, we will do so based upon our guideline hourly rates in effect at the time

services are rendered.  Stanley Gribble has agreed to fund advances to the CLIENT necessary to pay such fees and expenses.

Meanwhile, until such time as a case is filed and while we are working for CLIENT during the pre-petition phase, we shall send CLIENT monthly invoices with services billed at our guidelines rates and costs and expenses charged as described above.  Should payment not be received for any monthly invoice when due, CLIENT has agreed that ST&G may satisfy such invoice out of the trust account and that ST&G shall not be obligated to file or otherwise represent CLIENT in a chapter 11 case unless and until the amount on deposit in the trust account is restored to $250,000.  Should no bankruptcy case be filed, or should CLIENT desire the trust account to be closed prior to any bankruptcy filing, the funds in the trust account, including interest but less any amounts necessary to pay in full any obligations owed to ST&G, will, absent any conflicting claim, be returned to CLIENT.

Disclosures and Waivers.

While confidential communications between a client and counsel are privileged, CLIENT should be aware that the filing of a bankruptcy case may severely impact this attorney-client privilege.  Specifically, if a trustee is appointed in any bankruptcy case concerning a corporate debtor, the trustee will be able to compel disclosure by any counsel (including our firm) of information communicated by the corporation to counsel, and vice versa.  Whether a trustee appointed in a bankruptcy case concerning a limited liability company, a partnership or an individual debtor can compel such disclosures is unclear.  However, you ought to assume that disclosure would be required.

Because of the specialized nature of its practice, from time to time our firm may concurrently represent one client in a particular case and the adversary of that client (or a professional employed to represent that adversary) in an unrelated case.  Thus, for example, while representing CLIENT, ST&G may represent a creditor of CLIENT in that creditor's capacity either as a debtor or as a creditor of an entity which is unrelated to CLIENT.  In addition, while representing CLIENT, ST&G may represent a debtor of CLIENT as a debtor in a bankruptcy case or in connection with out-of-court negotiations with such entity's creditors concerning that entity's ability to pay its debts generally.  Please be assured that, despite any such concurrent representation, we strictly preserve all client confidences and zealously pursue the interests of each of our clients, including in those circumstances in which we represent the adversary of an existing client in an unrelated case.  CLIENT agrees that it does not consider such concurrent representation, in unrelated matters, of CLIENT and any adversary to be inappropriate and, therefore, waives any objections to any such present or future concurrent representation.

Several attorneys at ST&G have spouses, parents, children, siblings, fiancés or fiancées who are attorneys at other law firms and companies.  Those law firms and companies are Gibson, Dunn & Crutcher; Munger, Tolles & Olson; Owens & Gach Ray; Pachulski, Stang, Ziehl & Jones; Kendall, Brill & Klieger LLP; Cahill & Glazer; Saltzburg, Ray & Bergman;

Deloitte Touche LLP; and Skadden, Arps, Slate, Meagher & Flom LLP & Affiliates. More specific information about the individual attorneys expected to render services on your behalf is available upon request. ST&G has strict policies against disclosing confidential information to anyone outside of the firm, including spouses, parents, children, siblings, fiancés, and fiancées. You agree that you do not consider our representation of you to be inappropriate in light of any relationships described above.

At this time, ST&G is being employed only by CLIENT. ST&G, CLIENT and Festival Retail Fund 1, LP ("Festival") may hereafter agree that ST&G will also undertake the representation of Festival, which is a tenant in common with CLIENT. ST&G will not represent CLIENT or Festival in connection with any matters in which they may have conflicting interests or the rights as against each other arising from their tenant in common interests.

Policy Re Opinion Letters.

For years, ST&G has maintained a policy that it does not provide opinion letters to its clients or to others who might wish to rely on such letters. We do not alter this policy except under very unusual circumstances and then only upon further written agreement, as approved by a special committee of the firm, which compensates us for the special risks attendant to the furnishing of such opinions.

No Individual/Manager/Guarantor Representation.

ST&G is being engaged by CLIENT, a limited liability company. Our employment does not include the representation of any individual officer, member, manager, employee, or any guarantor of CLIENT's debts; we encourage each to consult independent counsel. ST&G will not represent Stanley Gribble or any other party that may have guaranteed any of the debts of CLIENT or any debts secured by CLIENT's assets, either in defending against any collection efforts by the holders of such claims or asserting subrogation rights against CLIENT or Festival. Stanley Gribble has indicated that he intends to engage other counsel to address such issues.

Discharge and Withdrawal.

CLIENT may discharge us at any time for any reason or for no reason at all. We may withdraw at any time with CLIENT's consent or for good cause without CLIENT's consent. Good cause includes your breach of this agreement (including CLIENT's failure to pay any statement when due), CLIENT's refusal or failure to cooperate with us, or any fact or circumstance that would render our continuing representation unlawful or unethical.

Client Files.

After the termination of our engagement, ST&G will retain CLIENT files in our possession for a period of 5 years following such termination. If CLIENT does not request the

Post Street, LLC
Attention: Stanley Gribble
June 13, 2011
Page 6

CLIENT files before the end of that 5 year period, upon the expiration of such period ST&G will have no further obligation to retain the files and may, in ST&G's discretion, destroy them without further notice to CLIENT.

### No Other Agreement.

This constitutes the entire understanding between CLIENT and ST&G regarding our employment. By executing this agreement you acknowledge that you have read carefully and understand all of its terms. The agreement cannot be modified except by further written agreement signed by each party.

### Conclusion.

If you have any questions about the foregoing, please call me. Moreover, feel free to obtain independent legal advice regarding this agreement. If you are in agreement with the foregoing, and it accurately represents your understanding of CLIENT's agreement with ST&G, please execute a copy of this letter, being sure to provide CLIENT's taxpayer identification number, along with a completed copy of the attached IRS form W-9, and return them to me. If not, kindly contact me immediately. We look forward to representing CLIENT in this matter.

Very truly yours,

STUTMAN, TREISTER & GLATT
PROFESSIONAL CORPORATION

By: *Jeffrey C. Krause* (signature)
Jeffrey C. Krause

JCK/dst
Enclosure

***UNDERSTOOD AND AGREED TO
THIS 14th DAY OF JUNE, 2011***

*POST STREET, LLC*

By: *Stanley W. Gribble* (signature)
Name: STANLEY W. GRIBBLE
Taxpayer I.D. No.: _____

551956v1

Case: 11-32255    Doc# 26    Filed: 07/15/11    Entered: 07/15/11 19:02:49    Page 17 of 20

## ACKNOWLEDGMENT AND AGREEMENT

The undersigned agrees to advance to CLIENT all sums required to pay ST&G's fees and expenses as awarded by the Bankruptcy Court because undersigned will benefit from CLIENT being well represented. The undersigned understands and agrees that ST&G represents CLIENT and does not represent the undersigned. ST&G's ethical duties shall be owed exclusively to CLIENT and ST&G shall take directions from authorized representatives of CLIENT. ST&G shall represent the interests of CLIENT and not the interests of the undersigned, even though the undersigned has committed to advance to CLIENT all sums necessary to pay ST&G's fees and expenses. The commitment of the undersigned is a continuing obligation until and unless the Bankruptcy Court enters an order terminating ST&G's employment by CLIENT.

DATED: June 14, 2011

_____
STANLEY GRIBBLE

551956v1

# EXHIBIT 3

**Exhibit "3"**

**STUTMAN, TREISTER & GLATT
PROFESSIONAL CORPORATION**

**RANGE OF HOURLY RATES TO BE CHARGED IN THESE CASES[3]**

**General Range of Rates:**

| | |
|---|---|
| Attorneys: | $285 to $950 per hour |
| Paralegals: | $240 per hour |
| Law Clerks: | $240-260 per hour |

**Rates of the Professionals Expected to be Most Active:**

| | |
|---|---|
| Jeffrey C. Krause | $825 per hour |
| Eric D. Goldberg | $725 per hour |
| H. Alexander Fisch: | $495 per hour |
| Michael S. Neumeister: | $285 per hour |

---

[3] ST&G's hourly rates are generally subject to change based upon prevailing market conditions, the increased experience of its attorneys, and other factors as of January 1 of each calendar year. The rates set forth in this Exhibit 3 are effective as of January 1, 2011.